Soopield, J.,
delivered the opinion of the court:
December 22, 1873, the claimants contracted with the Board of Public Works to build the unfinished part of the Tiber Creek sewer. Under this contract they constructed 3,184.4 lineal feet. The contract price was $113 a lineal foot. The work done at this rate amounted to $359,837.20. They were paid thereon $324,400.71, leaving an unpaid balance of $35,436.49.
The defendant objects to the payment of most of this balance, and claims that in the construction of the sewer the claimants made certain variations from the specifications of the contract, whereby the cost to them and the value to the defendant was lessened at the rate of $8.94 a lineal foot. The whole amount of deduction claimed on this account is $28,468.53. This de *575 fense will be considered in connection with the next stated item of the claimants’ demand.
Under instructions of the defendant’s .engineers, claimants built the arch of the sewer V¿ feet in height, laid the foundation timbers and planking 41 feet in length, and built the abutment 'walls 5¿- feet thick; whereas the contract required 1 foot less for the height .of the arch, 4 feet less for the length of the foundation timbers and planking, and, as they allege, 2 feet less for the thickness of the abutment walls. This enlargement of the sewer cost the claimants $56,712.59.
Before examining these two items of the claim and the defenses thereto, it is proper to observe that the contract is very imperfectly drawn. It provides that the arch shall have a 60-foot span and the abutment walls shall be 5J feet thick, but the foundation timbers and planking shall be 37 feet long.' It provides that the abutment walls shall be built upon the timbers aud planking, but the latter shall extend only from the inside of one wall to the outside of the other. It provides that the rise of the arch shall be 6 feet 6 inches, and shall correspond in size to arch already built, which had a rise of 7 feet 10 inches. It .provides that the skew-back course shall be of the same thickness as the abutment walls, to wit, 3 feet 6 inches, although it elsewhere provides that the abutment walls shall be 5 feet 6 inches in thickness. Some things that should appear in the specifications are entirely omitted, and some things that do appear are stated in very doubtful language. Apparently the scrivener wrote the contract without fully knowing what the parties had agreed upon, and the parties signed it without fully knowing what the scrivener had written.
Fortunately, there is one clause in the contract which, with the action of the parties thereunder, enables us to ascertain their intention.
The sewer had already been partly constructed by other parties. The claimants were to begin where they left off. The construction and size of the new work by the terms of the contract were to be similar to the old. The abutment and skew-back walls of the sample work here referred to and called for were 5 feet 6 inches in thickness; the sleepers were 41 feet in length, extending from outside to outside of the abutment walls, and the skew-back course was built up of rubble masonry. The *576 defendant furnished a working plan for the claimants to follow, which, so far as it went, corresponds to the work of the sample. The claimants, without objection or other requirements of the defendant, constructed the sewer substantially in accordance with this working plan and the sample work. They did what apparently they supposed the contract required them to do, and thus furnished us with their understanding and construction of it.
Thus the claimants proceeded with their work until about 680 feet had been completed. It was done under the supervision of Mr. Cluss, the District engineer, and his assistants. No complaint was made on either side. The contractors seemed content to make the enlargement and the defendant content with the quality of the work. Both, it is believed, substantially followed the sample and the working plan, but in some respects differed from the provisions of the contract.
Then came the act of June 20, 1874, by which the Board of Public Works was abolished and Commissioners appointed. Lieutenant Hoxie, of the Army, was detailed as District engineer. His first business was to examine the Tiber Creek sewer. It does not appear that he ever examined the sample work. He saw, however, that the work was not being done as well as the contract required. He particularly objected to the skew-back course. He required, as did the contract, the use of dimension stone. He was informed that the procurement of such stone would cause delay. He finally directed them to construct it of a certain kind of brick-work. At the same time he notified the person in eharge, supposed to be one of the claimants, that he should make a deduction in price, but named no amount. He reported his action to the commissioners, who made no objection. Thereafter the work proceeded to completion under Lieutenant Hoxie’s direction.
When the engineer caihe to make estimates for partial payments he deducted $8.94 a lineal foot for this change in the work. The claimants protested, and the dispute remains unsettled.
Here, then, are two important variations from the written contract, one in the size of the sewer and the other in the quality of the work. The one to the disadvantage of the claimants and the other to the defendant. Both were according to the working plan, so far as it went, and according to the sample. *577 In this way 680 feet were completed to the apparent satisfac-faction of both parties. The new engineer did not forbid the work to. proceed, but required it to proceed on a plan of his own, to which the claimants, conformed. To be sure, he said he should make a deduction in the price, but to this the claimants did not assent. It was not made as a condition of allowing them to proceed, but to save time and facilitate the work. It was for the defendant’s convenience, to avoid .delay. We think the work was done, substantially, in conformity to the sample work and the working, plan, and therefore reject the claimants’ demand for $56,712.59, on the one hand, and the defendant’s deduction of $28,468.53 on the other.
By direction of the defendant’s engineer the claimants constructed four lateral sewers, whose united length was 353 feet, and whose united cost was $5,525.19. (Finding IX.) The defendant claims that the claimants were bound by their contract to make these sewers at their own expense. The contract provides that “ all the connections for lateral sewers must be made when and as directed by the engineer.” This certainly requires the claimants to leave proper openings in the Tiber Creek sewer and join the lateral sewers thereto, but not to construct 373 feet of sewerage in order to bring the several parts within joining proximity. It was in contemplation of the original contract to build the Tiber Creek sewer along and near to the outlets of these lateral sewers. Its location was subsequently changed by agreement of the parties. It is said that this change was so favorable to the claimants that they could well afford to construct the extensions under the contract price. That may be so, but as the parties did not so agree the court cannot supply the omission by astrained and arbitrary construction. The •defendant should pay the claimants the reasonable cost, which is $5,525.19.
The claim of $40.25 (Finding IX) should not be allowed because it was required by the contract.
The Tiber Creek sewer discharges into the James Creek Canal with a fall of 7 or 8 feet. > The ground at this point is composed of sand and soft earth. To protect it against the flow and fall of the sewer drainage, the claimants built, by •direction of the engineer, extra foundations for the abutments and a perpendicular apron wall of masonry at right angles to the sewer and underneath the terminal sleepers. The one cost *578 $669.50 and the other $530.72. This work was absolutely necessary to prevent the sewer from being undermined. (Finding X.) Which party shall pay for it? The grade of the sewer was given when the contract was made. By the terms of the contract the claimants were required “in a good, firm, and substantial manner * * to build and complete * * * the sewer.” The $113 a foot was to be paid—
“As full compensation for furnishing all the materials and labor which may be required in the prosecution of the whole of the work to be done under this agreement, and in all respects complete the same?
In the judgment of the court this work was necessary for the completion of the sewer “ in a good, firm, and substantial manner.” The claimants were properly required to make it at their own cost.
The claimants also constructed, at defendant’s request (Finding XI), a cut-stone fagade at the terminus of the sewer at an expense of $1,852.69. It was merely ornamental, not required by the contract, and the defendant should pay for it.
The claimants present two bills, the one for building a brick invert, and the other for tearing down and rebuilding certain abutments. This work was done to correct a mistake in the grade, not discovered until after considerable progress had been made in the work. The party in fault must bear the loss. It appears (Finding XII) that it was a mistake of the claimants. A portion of this expense, amounting to $57.50, was occasioned by a change in plan by defendant’s engineer, and this amount should be paid by the defendant.
The claimants built a dam at Virginia avenue to divert the drainage of the sewer into the old Washington Canal at that point, to enable them the better to work at and complete the portion below. It appears to have been done for their own convenience. For this reason they must bear the expense of it. (Finding XIII.)
The claim of $45.87 for cleaning Maryland avenue sewer was for work done at the instance and for the benefit of the defendant, and was extra to the contract. It should be allowed.
The claim for the®cost of manholes (Finding XV) must be rejected. It is not extra work. The claimants were required by their contract “to completegthe sewer in a good, firm, and substantial manner.” Without manholes it would be neither good nor complete.
*579 The claimants present a bill of $6,147.41 for extra expense in constructing the sewer under the track of the Baltimore and Potomac Bailroad.
The contract contains these words :
“ It is further agreed that all loss or damage arising out of the nature of the work to be done under this agreement, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the'same, or from the action of the elements, or from incumbrances or injuries to individuals, property, or otherwise on the line of the work or adjacent thereto, shall be sustained by the said contractor.”
The claimants thus covenanted to sustain all loss arising out of injuries to property, and the decree above referred to settles the question that the disturbance of the Baltimore and Potomac Bailroad line was an injury to the company’s rights of property. It is very probable that neither of the parties at the time of the contract took that view of the railroad’s right, but that fact cannot affect the construction of the contract.
The claim of $25 for getting out stone from the banks of the canal (Finding XVIII) cannot be allowed, because it was not done at the request nor for the benefit of the defendant.
The claimant furnished, at the request and use of the defendant (Finding XVII), two sticks of timber valued at $18, which does not appear to have be'en required by the terms of the contract. This amount should be allowed.
The defendant charges the claimants with a quantity of stone estimated at 7,176 perches. It appears by the correspondence (Finding XVIII) that the claimants proposed to purchase the stone at $1 a perch, and that the defendant accepted the offer with a slight modification. The claimants appear to have been satisfied with the modification, for they soon began to get out the stone and actually removed about 100 perches. The purchase was apparently made in the belief and expectation of both parties, though not expressed in the correspondence, that the stone could be used in the construction of the sewer. It does not appear that claimants had any other use for them. After a few had been dug out from the canal banks and some of them placed in the walls, the defendant discovered that they were not fit for that work and forbade their use. The claimants took no more. The stones dug out of the bank and not put in the sewer were afterwards used by the defendant. The *580 remainder were left in the banks of the canal, which was under the control of the defendant. What became of them does not appear.
The court holds that the claimant should only be required to pay for the stone actually taken, which amounted to $100.
The claimants purchased of the defendant a steam pump for $1,000, a quantity of sewer-pipe worth $366.50, and some gravel worth $12.50j in all, $1,379. As no provision was otherwise made for the payment, it is to be presumed that it was intended to be credited upon the contract. For this reason the amount should be deducted from the claim.
The defendant claims $12,711 damages for the failure on the part of the claimants to fill up the old canal. The clause of the contract relied upon to sustain this item of the counterclaim is as follows:
“The contractors will be required to procure at their expense all the filling required to close the canal at the sides of the above-named sewer for the width of Third street, and from a point of forty (10) feet north of the north part of the sewer to the south end thereof, and to the depth of two (2) feet above the crown of the masonry as shaded in the plan.”
By the original contract the sewer was to have been built in the bed of the old canal. In that case the claimants were required to fill up the narrow spaces between the walls of the sewer and the banks of the canal. When the location of the sewer was changed this provision had no application to the canal, but became applicable to the sides of the sewer as elsewhere located. There is no complaint that this filling was not properly done. This item of the counter-claim cannot be allowed.
By these conclusions of the court the claimants are entitled to recover upon their several claims the sum of $43,(¡35.74.
The defendant is-entitled to recover upon the several counterclaims the sum of $1,479. Upon the whole case the claimants are entitled to judgment in the sum of $42,456.74 due and payable January 18,1876.
Drake, Oh. J., and Weldon, J., dissented.